IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEHN'S INNOVATIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-3042-N |
| | § | |
| TOTAL IMPORT SOLUTIONS, INC. | § | |
| D/B/A NANOSKIN CAR CARE | § | |
| PRODUCTS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Total Import Solutions, Inc. d/b/a Nanoskin Car

Care Products ("Total Import") and Steven Levy's (collectively "Defendants") motion to

dismiss the second amended complaint against them for lack of personal jurisdiction [8].

Because the Defendants have minimum contacts with Texas and exercising personal

jurisdiction comports with the notions of fair play and substantial justice, the Court denies

Defendants' motion.[1]

## I. ORIGINS OF THE MOTION TO DISMISS

This suit centers around U.S. Patent No. 6,883,732 Patent ("'732 Patent"). Plaintiff

Dehn's Innovations LLC ("Dehn's Innovations") avers that it owns the patent pursuant to a

---

[1]Because Dehn's Innovations is the party with the burden of proof and because it is fair to consider the issue of the extractor gun, the Court grants Dehn's Innovations's motion for leave to file surreply [34]. It therefore considers the surreply along with the other briefing on the motion to dismiss.

chain of assignments beginning in 2002 from Defendant Kaga Hasegawa ("Hasegawa") to Need Brain Co., Ltd. to Auto Wax Co., Inc. to Illinois Tool Works, Inc. to Dehn's Innovations.  Defendants, on the other hand, argue that, in 2011, Hasegawa instead assigned Total Import and Defendant GA-REW Corporation each half the rights to his patent.  Dehn's Innovations brought suit against Defendants[2] and others,[3] alleging patent infringement, inducement of patent infringement, contributory patent infringement, and Texas common law misappropriation, and requesting a correction of patent ownership, other declaratory relief, and damages.  Defendants now move to dismiss based on lack of personal jurisdiction.

## II. RULE 12(B)(2) STANDARD

In determining whether it may exercise personal jurisdiction over a nonresident defendant for patent claims, a district court must apply Federal Circuit law.  *Taylor v. Ishida Co., Ltd.*, 2002 WL 1268028, at *2 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)) ("This court applies Federal Circuit law, however, to determine whether personal jurisdiction can be exercised over an out-of-state defendant in a patent infringement case."); *see also LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).  For all nonpatent issues not intimately related to patent law, the court must apply the law of the circuit in which it sits.  *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  Here, because "the resolution of the patent infringement issue will be a significant factor" in determining liability for

---

[2]Levy is Total Import's sales manager.  Defs.' App. 8 [10] (Levy's declaration).

[3]GA-REW Corporation and Hasegawa.

Dehn's Innovations's Texas misappropriation claim,[4] the Court applies Federal Circuit law. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Where the parties have conducted jurisdictional discovery, the plaintiff must establish jurisdiction by a preponderance of the evidence. *See Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001).[5]

---

[4]Dehn's Innovations's Texas misappropriation claim alleges that Defendants knowingly falsely communicated to third parties that Total Import is the owner of the '732 Patent, profited from the misappropriation, and took the action fraudulently, maliciously, and with bad faith. Second Am. Compl. 11 [7]. It follows that if the Court holds that Total Import is the owner of the '732 Patent, Dehn's Innovations's misappropriation claim fails. Thus, "the question of [patent ownership] is a critical factor in determining the liability under the non-patent claims." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1340 (Fed. Cir. 2008). Accordingly, Dehn's Innovations's misappropriation claim is intimately linked to patent law, and Federal Circuit personal jurisdiction law applies.

[5]But see *Dram Techs. LLC v. Am. II Grp., Inc.*, 2011 WL 4591902, at *2 n.1 (E.D. Tex. 2011), where the court stated that:

> It is not entirely clear that Federal Circuit law requires the preponderance of the evidence burden. Although *Pieczenik* was determining personal jurisdiction for a patent infringement lawsuit, it was also performing its analysis under a unique New York long-arm statute. *Pieczenik*, 265 F.3d at 1330-1331. Therefore, it is not clear *Pieczenik* was using Federal Circuit law when it stated that when the parties have conducted jurisdictional discovery, the plaintiff bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists. *Id.* at 1334. Indeed, when announcing the preponderance of the evidence standard, the court in *Pieczenik* cited Second Circuit law. Furthermore, not all courts apply the preponderance of the evidence burden after jurisdictional discovery. *See D & S Turbine Int'l, Inc. v. Research Mgmt. Sys., L.C.*, Civ. H-05-2158, 2006 WL 287971, at *2 (S.D. Tex. Feb.[]6, 2006) (stating that "[t]he Fifth Circuit, while not directly

Personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether the forum state's long-arm statute permits service of process and (2) whether the assertion of personal jurisdiction would violate due process. *LSI*, 232 F.3d at 1371. A nonresident defendant is subject to the personal jurisdiction of a federal court to the same extent that the defendant would be amenable to the jurisdiction of a state court in the same forum. *Id.* ("We defer to a state's highest court to interpret whether a defendant is amenable to process in the forum state."); *Taylor*, 2002 WL 1268028, at *2 ("The court first decides whether the defendant is amenable to process in the forum state."). This Court, therefore, must apply Texas law to ascertain if Texas may assert long-arm jurisdiction over Defendants.

The Texas long-arm statute confers jurisdiction to the limits of the federal constitution. *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need only concern itself with the federal due process inquiry. *Taylor*, 2002 WL 1268028, at *2.

Due process requires the satisfaction of two elements for a court to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2)

---

addressing the issue, has stated that [w]hen, as here, the district court conducted no evidentiary hearing, the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction.'").

Regardless which standard applies, the Court would reach the same result here.

it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985).  The due process clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)).  The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (quoting *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has considered whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer v. Heitner*, 433 U.S. 186, 203 (1977).

A court may exercise two types of *in personam* jurisdiction over a nonresident defendant: specific and general.  Specific jurisdiction exists if the cause of action is related to or arises out of the defendant's contacts with the forum, and those contacts meet the due process standard. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (citing *Burger King*, 471 U.S. at 472-73).  A court may have general jurisdiction, on the other hand, where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*,

466 U.S. 408, 415 (1984) (citations omitted); *see also LSI*, 232 F.3d at 1375.  In this case,

Dehn's Innovations argues only that the Court possesses specific jurisdiction over

Defendants.

Under either a general or specific jurisdiction analysis, however, "[t]he constitutional

touchstone remains whether the defendant purposefully established 'minimum contacts' in

the forum State." *Burger King*, 471 U.S. at 474.  The purposeful availment requirement of

the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral

activity of another party or a third person.'"  *Id.* at 475 (omitting internal citations).  There

must be a substantial connection between the nonresident defendant and the forum state.  *See*

*Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

### III. THE COURT DENIES DEFENDANTS' MOTION

The Federal Circuit applies a three-prong test to determine whether specific

jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of

the forum; (2) whether the claim arises out of or relates to those activities;[6] and (3) whether

the court's assertion of personal jurisdiction is reasonable and fair.  *Genetic Implant Sys. v.*

*Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Akro Corp. v. Luker*, 45 F.3d

1541, 1545-46 (Fed. Cir. 1995)).  Once a plaintiff has established prongs one and two, the

defendant has the burden of proof to show that the exercise of jurisdiction would be

---

[6]The Federal Circuit has stated that "[o]ur own interpretation of the 'arise out of or related to' language is far more permissive than either the 'proximate cause' or the 'but for' analyses [of other circuit courts]."  *Avocent*, 552 F.3d at 1337.

unreasonable. *See Burger King*, 471 U.S. at 477. Factors the court may consider include: (1) the burden on the defendant to subject him to suit in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006) (citing *Burger King*, 471 U.S. at 477). The Federal Circuit has counseled, however, that in general, the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King*, 471 U.S. at 477).

The parties agree that Total Import is a California corporation with its principal place of business in California, and Levy is a resident of New York. Second Am. Compl. 1; Defs.' App. 3, 8 (declarations of Paoting Heilian and Levy). However, Dehn's Innovations argues that the Court may exercise personal jurisdiction over them because Defendants have direct contacts with the State of Texas related to each of Dehn's Innovations's three categories of claims and because asserting jurisdiction comports with notions of fair play and substantial justice and is constitutionally reasonable.

### A. The Court Has Personal Jurisdiction Over Total Import

ORDER – PAGE 7

Dehn's Innovations presents evidence that Total Import had the following contacts with Texas: it (a) sold both allegedly infringing and noninfringing products to Texas residents, (b) directed false communications to Texas, and (c) directly contacted Dehn's Innovations in Texas to attempt to obtain a license for the '732 Patent.  The Court discusses each of Total Import's alleged contacts in turn.

First, Dehn's Innovations presents evidence that Total Import sold products (both noninfringing and allegedly infringing) to Texas residents in Kingwood, Corpus Christi, Rowlett, and Round Rock.  App. to Pl.'s Resp., Exs. 18-19, pp. 43-48 [28-2].  Of these products, Total Import sold two, and at least received an order for one more, extractor guns to two separate Texas residents.  *Id.* (sales order for extractor gun from Texas resident; invoice for two extractor guns to Texas resident).  Dehn's Innovations argues that the '732 Patent covers Total Import's extractor gun.  *See* Surreply 3-4 [34-1].  The '732 Patent is generally

> an apparatus for applying fluids to a surface.  The apparatus includes a nozzle coupled to a pressurized gas supply source and a fluid supply source.  The nozzle includes [an] outer conduit and an inner conduit positioned such that a gap is formed between the inner and outer conduits.  The outer conduit is coupled to the pressurized gas supply source.  The inner conduit is coupled to the fluid supply source.  Gas passed through the gap between the inner and outer conduits pulls fluid from the fluid supply source and into the gas stream.

App. to Pl.'s Resp., Ex. 7, p. 50 [28-1].  The Court finds that, given the descriptions of the patent and the extractor gun, *see* Surreply 3-4, Dehn's Innovations has met its burden to show that these contacts relate to its infringement claims.

Second, Dehn's Innovations has presented evidence that Total Import contacted numerous Texas residents stating that Total Import – not Dehn's Innovations – is the owner of the '732 Patent.  Specifically, a copy of a letter from Jerry Heilian,[7] President and Chief Executive Officer ("CEO") of Total Import, to Total Import's clients and prospective clients, attached to an email to the same, states that Dehn's Innovations reassigned the '732 Patent to Hasegawa and that Total Import now owns the '732 Patent along with GA-REW Corporation.  App. to Pl.'s Resp., Ex. 21, 56.  Total Import attached to the letter a document titled "Patent Assignment Abstract of Title," which shows that Dehn's Innovations owned the '732 Patent at one point by a series of assignments, but shows Hasegawa as owning the patent by at least September 2011 and reflects an assignment from Hasegawa to Total Import and GA-REW Corporation recorded on October 12, 2011.  *Id.* at 58-60.  Total Import admitted to sending these communications to twenty-one Texas residents.  App. to Pl.'s Resp., Ex. 15, pp. 106-07.  Further, Levy testified that he had telephone conversations on behalf of Total Import with three Texas companies where he extensively discussed the '732 Patent. App. to Pl.'s Resp., Ex. 17, pp. 40-41.  These contacts also clearly relate to and arise out of all three categories of Dehn's Innovations's claims – patent infringement, patent ownership, and Texas misappropriation.[8]

---

[7]This appears to be the same Paoting Heilian referenced previously in this Order.

[8]Because it is beyond the scope of the Order, the Court does not discuss whether Dehn's Innovations has stated claims upon which relief can be granted.

Third, Dehn's Innovations has presented evidence that Total Import contacted Dehn's Innovations, a Texas company, in order to obtain a license from Dehn's Innovations for the '732 Patent. *See* App. to Pl.'s Resp., Ex. 24, pp. 107-25. This contact, too, clearly relates to Dehn's Innovations's causes of action.

Because Dehn's Innovations has shown that Total Import has contacts with Texas and that those contacts arise from or relate to Dehn's Innovations's causes of action, the Court now turns to analyze whether those contacts comport with the notions of fair play and substantial justice. Defendants argue that the Federal Circuit has held that it violates due process for a court to consider sufficient for jurisdictional purposes contacts such as letters directed to a forum state and negotiations for licenses in a forum state. Reply 8. Defendants cite *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), for this proposition, where the Federal Circuit held that "cease-and-desist letters [from alleged patent owners to alleged infringers] alone do not suffice to create personal jurisdiction" because "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360-61. Moreover, the Circuit continued, treating an offer for a license as a contact for jurisdictional purposes is similarly improper. *Id.* at 1361;[9] *see*

_____

[9]The *Red Wing* court explained:
An offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship. . . . The policy favoring settlement is manifest in, among other places, the Federal Rules of Evidence. . . . Although the Rules do not explicitly make evidence of such negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an

*also Breckenridge*, 444 F.3d at 1366 (stating that "a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there.").

The Court agrees with Defendants that it violates due process to consider Total Import's negotiations for a license for personal jurisdiction purposes. However, the Court disagrees that *Red Wing* militates toward holding that the exercise of personal jurisdiction over Total Import based in part on its letters to the forum state violates due process.

First, *Red Wing* was a declaratory judgment action, whereas here Dehn's Innovations seeks damages in addition to declaratory relief. Second, *Red Wing* – and a similar Federal Circuit case *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) – emphasize that cease-and-desist letters *without more* are insufficient to satisfy due process for jurisdictional purposes. Indeed, in *Akro*, the Federal Circuit held that it had personal jurisdiction based on the letters and defendant's other substantial contacts in the state. *See Akro*, 45 F.3d at 1548; *Red Wing*, 148 F.3d at 1362 (stating as much while discussing *Akro*). The Federal Circuit has since clarified this point, stating that "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and

---

approach that fosters settlement of infringement claims. Indeed, this policy squarely invokes one of the considerations enumerated by the Supreme Court for the second prong of a proper Due Process analysis, namely, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies."

*Red Wing*, 148 F.3d at 1361.

related to the cause of action besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202.

Third, it is significant here that Total Import's letters were not cease-and-desist letters as was the case in *Red Wing*. Rather, it directed its letters to its current and prospective customers to inform them of alleged false accusations of infringement against it. The *Red Wing* court held that exercising personal jurisdiction on the basis of cease-and-desist letters that the alleged patent owner sent to the alleged patent infringer would violate due process for policy reasons: (a) because it would discourage the settlement of patent disputes, *see, e.g.*, Megan M. La Belle, *Patent Litigation, Personal Jurisdiction, and the Public Good*, 18 GEO. MASON L. REV. 43, 47-48 (2010); Marketa Trimble, *Setting Foot on Enemy Ground: Cease-and-Desist Letters, DMCA Notifications and Personal Jurisdiction in Declaratory Judgment Actions*, 50 IDEA 777, 779 (2010), and (b) because rights holders should be able to police their rights by contacting alleged infringers, *see, e.g.*, Trimble, *supra*.

Here, however, Total Import's actions were neither preemptive attempts to settle a patent dispute nor attempts to notify an infringer of its infringement. Rather, Total Import's actions were reactive and intentionally pointed toward promoting its own business at the expense of hurting Dehn's Innovations's business in Texas and elsewhere. *See* App. to Pl.'s Resp., Ex. 15, pp. 108-09. In a way, these letters are the complete opposite of cease-and-desist letters, in that they are more like offers to sell than warnings not to do so. Here, unlike the *Red Wing* line of cases, Total Import has purposefully availed itself of the privilege of conducting business in the forum state. Through its letters, Total Import has taken

ORDER – PAGE 12

affirmative steps in Texas to promote its business in Texas. This is precisely the kind of relationship among the defendant, the forum, and the litigation that makes maintenance of the case in Texas reasonable and in line with due process. Thus, *Red Wing* and its progeny are inapposite.

Defendants do not argue that exercising personal jurisdiction over them would otherwise be constitutionally improper, and the Court holds that it is not constitutionally improper. Given the foregoing, the Court holds that it has personal jurisdiction over Total Import.

### B. The Court Has Personal Jurisdiction Over Levy

The Court must analyze personal jurisdiction separately as to each defendant. *See, e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . . Each defendant's contacts with the forum State must be assessed individually."). And unlike Texas general jurisdiction cases,[10] where the fiduciary shield doctrine shields employees from a court's exercise of jurisdiction for actions taken in the employees' official capacities, *see, e.g.*, *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 (Tex. App. – Hous. [1st Dist.] 2004, pet. denied); *Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 300 (Tex. App. – Fort Worth 2001, no pet.), the Federal Circuit does not apply that doctrine, *see Campbell Pet Co. v. Miale*, 542 F.3d 879, 889 (Fed. Cir. 2008) (citing

---

[10]The Texas Supreme Court has not specifically adopted the fiduciary shield doctrine, and Texas appellate courts have applied it only for purposes of general jurisdiction rather than specific jurisdiction. *See, e.g.*, *Brown*, 39 S.W.3d at 300.

*Calder v. Jones*, 465 U.S. 783, 790 (1984)).  Thus, Levy's status as an employee does not shield him from the Court's analysis of his contacts exercised in his official capacity.

Dehn's Innovations has met its burden to show that the Court has personal jurisdiction over Levy.  As discussed above, the Court holds that Total Import's contacts of (a) selling infringing and noninfringing products to Texas residents and (b) sending letters asserting patent ownership to Texas customers and prospective Texas customers are sufficient to exercise personal jurisdiction over Total Import.  Levy is Total Import's sales manager.  In that role, he is "generally responsible for directing efforts to sell Total Import['s] products to existing customers . . . ."  Defs.' App. 9.  Although he does not name Texas residents as those "existing customers," *see id.*, the evidence of Total Import's sales to Texas residents belies that omission, and Levy admitted that some of his contact with Texas residents resulted in sales, App. to Pl.'s Resp., Ex. 17, p. 36.  Levy further admitted in his declaration that he has "communicated, by phone, email, and in person, Total Import['s] position that it and GA-REW Corporation own the patent-in-suit and that Dehn's [Innovations's] . . . ownership claim rests upon a forgery, to several customers and potential customers of Total Import . . . ."  Defs.' App. at 12.  Again, although Levy states that these customers and potential customers did not include Texas residents, his testimony reveals that he had phone conversations with three Texas companies to discuss the '732 Patent, *id.* at 40-41, and that he sent out emails containing the attached letter regarding the '732 Patent to Texas residents. *See id.* at 37.  As the Court has already held that these contacts arise from or relate to Dehn's Innovations's claims and that exercising jurisdiction comports with the notions of fair play

and substantial justice and would not otherwise be constitutionally unreasonable, the Court need not repeat its analysis. Accordingly, the Court holds that it has personal jurisdiction over Levy.

## CONCLUSION

The Court has personal jurisdiction over Total Import and Levy. Accordingly, it denies their motion to dismiss.

Signed August 29, 2012.

_____
David C. Godbey
United States District Judge