UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **Dehn's Innovations LLC** § | | |
| § | | **Civil Action No.** |
| **Plaintiff,** § | | |
| § | | **3:11-cv-3042** |
| v. § | | |
| § | | |
| **Total Import Solutions, Inc. d/b/a** § | | |
| **Nanoskin Car Care Products, Ga-Rew** § | | **JURY TRIAL DEMANDED** |
| **Corp., Kaga Hasegawa, an** § | | |
| **Individual, and Steven Levy,** § | | |
| **an Individual** § | | |
| § | | |
| **Defendants.** § | | |
| § | | |

**FINAL JUDGMENT AS TO DEFENDANT
TOTAL IMPORT SOLUTIONS, INC. D/B/A NANOSKIN CAR CARE
PRODUCTS**

The Court hereby makes the following findings of fact and conclusions of law, and enters the following judgment.

**FINDINGS OF FACT**

1. Plaintiff Dehn's Innovations, LLC (hereinafter "Dehn") is a Texas limited liability company with its principal place of business at 4421 Black Otter Trail, Dallas, Texas 75287.

2. Defendant Ga-Rew Corporation (hereinafter, "Ga-Rew") is a Japanese corporation with its principal place of business at 2-18-10, Nishiogi Minami, Suginami-ku, Tokyo, 167-0053, Japan. Defendant Kaga Hasegawa (hereinafter, "Inventor") is an individual residing in Japan at 2-18-10, Nishiogi Minami, Suginami-ku, Tokyo, 167-0053, Japan. Ga-Rew and Inventor are collectively referred to herein as "Ga-

Rew/Inventor". Defendant Total Import Solutions, Inc. d/b/a Nanoskin Car Care Products is a California corporation located at 511 S. Harbor Blvd., Suite P, La Habra, California 90631 ("TIS"). TIS is represented in the settlement negotiations which led to the settlement documents by Paul Maddock and Senniger Powers, 100 North Broadway, Suite 1700, St. Louis, MO 63102.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338 because this action, at least in part, is an action for patent infringement and arises under the Patent laws of the United States, Title 35 of the United States Code. Jurisdiction also exists pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has jurisdiction over any Texas state law claims under principles of pendent, ancillary, and supplemental jurisdiction, 28 U.S.C. §§ 1338(a) and (b) and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (d), and 1400(b) because, *inter alia*, one or more of the acts of infringement complained of took place in this district and the State of Texas.

5. Dehn is a manufacturer and marketer of automobile related products that are sold throughout the United States as well as internationally.

6. On or about February 27, 2001, Japanese patent application no. 2001-052618 (the "Japanese Patent Application") was filed by or on behalf of the inventor, Kaga Hasegawa (the "Inventor"). The Japanese Patent Application was never published, and did not mature into a patent in Japan.

7. On or about February 27, 2002, Mr. Shigeki Ueta, a Japanese patent attorney with the firm of Ueta International Patent Office in Tokyo, Japan, (the "Japanese Patent Attorney") sent a patent application to be filed in the United States claiming priority to the underlying Japanese Patent. This U.S. patent application No. 10/084,629 claims priority to the Japanese Patent Application, and subsequently issued as U.S. Patent No. 6,883,732 B2, referred to herein as the " '732 Patent."

8. On or about March 28, 2002, an inventor's declaration and an assignment were sent to the Japanese Patent Attorney for signature by the Inventor. The Japanese Patent Attorney was asked to review the documents to be sure that he understood them, and, if the documents were correct, to then have them executed by the appropriate people.

9. TIS agrees not to contest the follow facts: On or about September 25, 2002, the Japanese Patent Attorney forwarded the inventor's declaration and the assignment for the '732 Patent. The inventor's declaration and the assignment were signed by the Inventor, and the Inventor assigned, in 2002, all rights in the Japanese Patent to a Japanese company by the name of "Need Brain Co., Ltd." ("Need Brain"). Need Brain is also listed as an applicant for the Japanese Patent Application.

10. The assignment of the '732 Patent to Need Brain was recorded with the U.S. Patent and Trademark Office ("USPTO") on or about October 21, 2002. This assignment has been publicly available since shortly after it was filed in the USPTO in late October 2002.

11. The '732 Patent issued on or about April 26, 2005, and the listed assignee of this patent is Need Brain. TIS does not contest that notice of such issuance was sent to the Japanese Patent Attorney on May 9, 2005, and again on June 13, 2005.

12. Need Brain subsequently assigned, for value, the '732 Patent to Auto Wax Co., Inc. ("Auto Wax") and in this assignment Need Brain warranted that it had the full right to convey the '732 Patent to Auto Wax. On or about November 14, 2005, the assignment of the '732 Patent from Need Brain to Auto Wax was sent to the USPTO for filing. The recordation of the assignment was sent by the USPTO to counsel for Auto Wax on or about March 30, 2006.

13. TIS does not contest that on or about October 17, 2006, the '732 Patent was assigned, for value, from Auto Wax to Illinois Tool Works, Inc. ("ITW"), and this assignment was recorded in the USPTO.

14. TIS does not contest that finally, on or about February 4, 2011, the '732 Patent was assigned, for value, from ITW to Dehn, and this assignment was likewise recorded in the USPTO.

15. After the assignment of the '732 Patent, Dehn engaged in negotiations with defendant Total Import Solutions. Total Import Solutions requested a license to the inventions set forth in the '732 Patent.

16. Dehn did not license TIS under the '732 Patent.

17. In October 2011, after licensing negotiations ceased for the inventions in the '732 Patent to Total Import Solutions, the Inventor filed a purported assignment, in the USPTO, from the Inventor to Ga-Rew Corp. and TIS. Defendant TIS subsequently issued marketing materials that incorrectly stated that Total Import Solutions and Ga-Rew owned the rights to the '732 Patent, and that falsely stated that Dehn had "reassigned" the '732 Patent to the original inventor, Mr. Kaga Hasegawa, the owner of Ga-Rew Corporation.

18. TIS does not contest that: As the foregoing indicates, the Japanese Patent Attorney requested that a U.S. patent application be filed claiming priority to the Japanese Patent Application. The U.S. patent application, which matured into the '732 Patent, was assigned in 2002 to Need Brain by the Inventor, which is the same company that is listed as an applicant for the Japanese Patent Application. The '732 Patent was duly and legally issued to Need Brain. The face of the '732 Patent identifies Need Brain as the owner of the '732 Patent.

19. Over the course of approximately six (6) years from the date of issuance of the '732 Patent, several subsequent assignments of the '732 Patent were made to purchasers for value (*e.g.*, Need Brain to Auto Wax, Auto Wax to ITW, and ITW to Dehn).

20. TIS does not contest that: The Inventor attended a trade show in Las Vegas a few months after the '732 Patent issued in April 2005. The Inventor met Mr. Dennis Dehn at this trade show and was shown products covered by the '732 Patent that were being offered for sale at the trade show. The Inventor was shown a copy of the '732 Patent in 2005 and knew in 2005 that the '732 Patent listed Need Brain as the owner of the '732 Patent on the first page of the '732 Patent. The Inventor also knew in 2005 that the '732 Patent had been assigned to Auto Wax Company from Need Brain. At no time during the approximate (10) years from the filing of the application for the Japanese Patent, to the assignment of the '732 Patent from ITW to Dehn, did the Inventor or anyone else claim that the original assignment from the Inventor to Need Brain (or anyone else along the chain of title) was invalid or ineffective.

21. TIS does not contest that: Dehn had no knowledge of any alleged invalidity or ineffectiveness of the assignment from the Inventor to Need Brain when Dehn acquired rights via assignment from ITW. The assignments to all parties in the chain of title from the Inventor to Need Brain to Auto Wax to ITW to Dehn were valid, proper, correct, and supported by adequate consideration.

22. TIS does not contest that Dehn is a good faith purchaser of all rights in and to the '732 Patent, without notice as to any invalidity or defect in the chain of title to the '732 Patent.

23. TIS does not contest that: Based on his knowledge and belief in his rights in and to the '732 Patent, Dehn has expended a great deal of time, energy and money into expanding the business for the inventions contained in the '732 Patent, and has created a successful and growing business based upon the rights obtained in and to the '732 Patent.

24. Defendants have not ever paid for the filing fees, U.S. attorney's fees, maintenance fees, or any other costs to file, prosecute, and maintain the '732 Patent.

25. Defendants have sold, made, imported, and/or used at least 2000 units of products that infringe upon Dehn's rights in and to the '732 Patent, including the EG-1002 (also known as the PT-2), EG-1004, and EG-1008 products (hereinafter referred to as the "Infringing Products").

26. Defendants sell the Infringing Products in a wide range of locations. Defendants seek generally to sell the Infringing Products to retailers, distributors, dealers, and/or the general public, including the general public in the State of Texas and this District.

27. The activities of the Defendants with regard to their sales, importation, manufacture and/or use of the Infringing Products are and have been without authorization from Dehn.

28. At least as early as 2003, Dehn began using the trademark TORNADOR in connection with his products and services.

29. Dehn's TORNADOR mark was registered with the United States Patent and Trademark Office under Reg. No. 3553562, which was issued on or about December 30, 2008.

30. Inventor, Ga-Rew, and TIS have, without authorization from Dehn, used the TORNADOR mark in connection with spray gun products. TIS contends that some of its such use was a comparative fair use.

31. Any finding of fact that is deemed to be a conclusion of law is hereby adopted as such.

**CONCLUSIONS OF LAW**

32. This is an action to determine ownership and infringement of the '732 Patent. The '732 Patent was duly and validly issued in the name of the Need Brain, and duly and validly assigned to subsequent purchasers of value, and recorded with the USPTO.

33. Dehn is a good faith purchaser of all rights in and to the '732 Patent, without notice of any alleged defect or invalidity in the assignments or chain of title to the '732 Patent.

34. The purported assignment obtained by and filed in October 2011 that allegedly creates rights in the '732 Patent in favor of Ga-Rew and Total Import Solutions is null and void.

35. Dehn is the rightful owner of the '732 Patent and all intellectual property rights therein.

36. Dehn is the eventual successor-in-interest to Need Brain with respect to the '732 Patent and the inventions disclosed therein, by virtue of the various assignment documents referenced herein.

37. As the successor-in-interest to Need Brain with respect to the inventions at issue, the patent at issue and the assignment of rights therein, Dehn is a third party beneficiary of the contract between Ga-Rew/Inventor and Need Brain.

38. TIS does not contest, and the Court orders: Total Import Solutions is estopped from challenging Dehn's ownership of the '732 Patent by virtue of the fact that the Inventor's assignment to Need Brain has been of public record for approximately ten (10) years, and the subsequent assignments from Need Brain to Auto Wax, from Auto Wax to ITW, and from ITW to Dehn are unchallenged. Total Import Solutions is also barred under the appropriate statute of limitations from asserting ownership in and to the '732 Patent.

39. Because TIS consents to the ownership of the '732 Patent in favor of Dehn, it necessarily follows that TIS's products infringe the '732 Patent.

40. TIS consents to entry of judgment against it that its spray gun products are covered by the '732 Patent. TIS consents to entry of judgment that the '732 Patent is valid and enforceable.

41. TIS consents to entry of judgment that the patent and trademark rights of Dehn are not barred or limited by laches, waiver, estoppel, or fraud.

42. This Judgment shall finally conclude and dispose of this litigation as to TIS and Dehn, and issue preclusion, claim preclusion, res judicata, and collateral estoppel effect shall apply in future litigation or Patent and Trademark Office proceedings related to the '732 Patent or the TORNADOR trademark as between TIS and Dehn. TIS, Dehn, and this Court explicitly intend such issue preclusion, claim preclusion, res judicata, and collateral estoppel effects to extend to the issues of claim construction, validity, and enforceability regarding all claims of the '732 Patent or the TORNADOR trademark in any future proceedings between TIS and Dehn.

43. Any Conclusion of Law that is deemed to be a Finding of Fact is hereby adopted as such.

IT IS FOUND, ORDERED, ADJUDGED, AND DECREED that:

1. Total Import Solutions agrees, and the Court holds, that Dehn is the sole owner of all rights in and to the '732 Patent.

2. Total Import Solutions, and its parents, subsidiaries and associated companies, and the officers, agents, servants, employees, successors, and assigns of any of them, and all other persons in active concert or participation with any of them who receive actual notice of this Judgment (including the manufacturers and suppliers of their products) are hereby permanently restrained and enjoined during the unexpired term of the '732 Patent from directly, contributorily, or by inducement, making, causing to be made, using or causing to be used, selling or causing to be sold, offering for sale or causing to be offered for sale, and importing or causing to be imported in or into the U.S., any device, apparatus,

system, or process that is covered, either literally or by the doctrine of equivalents, by any claim of the '732 Patent. These products include but are not limited to the Infringing Products, and any other spray gun products which are not colorably different from the Infringing Products, and not originating with or purchased from Dehn.

3. Total Import Solutions, and its parents, subsidiaries and associated companies, and the officers, agents, servants, employees, successors, and assigns of any of them, and all other persons in active concert or participation with any of them who receive actual notice of this Judgment, are hereby permanently restrained and enjoined from:

(a) using the TORNADOR mark or any colorable imitation thereof in the U.S. on or in connection with goods and/or services not originating with Dehn, other than as may be allowed pursuant to license terms with Dehn; and,

(b) advertising, distributing, importing, manufacturing, offering for sale or selling any goods or services in or into the U.S. using the TORNADOR mark or any colorable imitation thereof on or in connection with goods and/or services not originating with or purchased from Dehn, other than as may be allowed pursuant to license terms with Dehn.

4. Total Import Solutions consents to, and the Court orders Total Import Solutions to issue and distribute the attached press release set forth in Exhibit A to all persons/entities who have purchased any of the Infringing Products from Total Import Solutions, and the Court also orders that if Total Import Solutions receives future inquiries/orders from customers and/or prospective customers relating to the Infringing Products, then Total Import Solutions shall refer such customers and/or prospective customers, and inquires/orders, to Dehn.

5. Subject to the parties' covenants not to sue, Total Import Solutions consents to, and the Court hereby orders Total Import Solutions to pay Dehn, as a reasonable royalty, twenty dollars per unit ($20/unit) for one thousand five hundred (1500) units of Infringing Products, for a total payment the sum of thirty thousand dollars ($30,000), with such payment being as follows: $7,500 by March 13, 2013, and $22,500 by April 25, 2013. If either of such payments is not timely made, then Total Import Solutions shall, in addition, pay to pay interest at the rate of 1.5% per month, or the maximum allowable by law (whichever is greater), and, in addition, all of Dehn's reasonable attorneys' fees and costs incurred in order to procure full payment to Dehn.

6. Total Import Solutions is hereby ordered to send to outside of North America, at its cost and by April 1, 2013, all of its inventory of Infringing Products (such inventory including at least 983 units of the EG-1002 product, 102 units of the EG-1004 product, and 540 units of the EG-1008 product), and Total Import Solutions shall provide, by April 10, 2013, proof of such return to Dehn in the form of photos, documents, and a sworn affidavit from Jerry Heilian (the CEO of Total Import Solutions). Total Import Solutions shall thereafter be permitted to sell such inventory in countries outside of North America (*e.g.*, in countries other than the U.S., Mexico, Central America, and Canada), and use its best efforts to insure that such inventory does not reenter the U.S. market.

7. This Court retains exclusive jurisdiction of this action for the purpose of ensuring compliance with this Judgment.

8. No appeal shall be taken by any party from this Judgment, the right to appeal being expressly waived by all parties.

9. Final Judgment shall be entered pursuant hereto, forthwith, without further notice.

10. Each party to bear their own costs and attorneys' fees, except with respect to any attorneys' fees and costs incurred in enforcing this judgment.

11. All other relief not expressly granted herein is denied.

The Clerk is directed to enter this final judgment forthwith.

Signed March 15, 2013.

_____
David C. Godbey
United States District Judge